## PARKS v. STATE.

No. A-11923. Nov. 18, 1953.

(263 P. 2d 523.)

Odes Harwood, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., James P. Garrett, Asst. Atty. Gen., and Granville Scanland, County Atty., Oklahoma County, Oklahoma City, for defendant in error.

POWELL, P. J. Ilanders Parks was charged in the district court of Oklahoma county with the crime of assault with intent to kill. He was tried before a jury which returned a verdict of guilty of the crime of assault with a dangerous weapon, leaving the punishment to the court, who sentenced the defendant to serve a term of three years in the State Penitentiary.

The brief of the appellant covers about a half page, and is to the effect that the evidence is insufficient as a matter of law to sustain a conviction of asault with a dangerous weapon. No complaint is made as to the information, or the instructions of the court to the jury. No special instructions were requested. We have examined the record carefully.

The prosecuting witness, Robert R. Combs, the person shown to have been the victim of the assault, testified that he was working for the J. R. Witt Produce Company in Oklahoma City, and on the day of the alleged assault was engaged in changing a tire on one of his employer's trucks, and he noticed three boys some 30 feet on the property of the produce company, and observed the defendant up on the loading dock getting oranges out of a box that had a stave or board broken. Witness yelled at Parks to get off the dock, and he yelled back to Combs that he could not put him off. Witness then called "Tiny", same person as Ralph E. Shipman, another employee of the company, and a husky person, and when he appeared the defendant jumped off the dock and began cursing. Combs told him to get clear off the property, and thought he had gone and resumed his task of tightening the tire lugs. Shortly defendant appeared at the truck and said: "You are the one I want," and started after Combs, who started walking out between two trucks and that is the last he remembered until he regained consciousness in the Mercy Hospital about two and a half hours later. Combs denied that he had anything in his hands as he walked to meet the defendant. He did not know what hit him. Witness was in the hospital three weeks, and months later at the trial was still under the care of physicians. His skull was fractured.

On cross-examination witness stated that defendant called him vile names when he caught him taking oranges. He denied calling the defendant a vile name at the time he requested him to get off the property, but did not know what he said after defendant commenced to abuse him.

Ralph E. Shipman, called Tiny, testified in part:

"I first saw him when I came out of the cooler and I had a box of oranges in my hands. I first saw him when I came out of the cooler, the refrigeration box inside of the building, and I saw him arguing with Robert Combs, and he was using quite a few cuss words, and so I set my box of oranges down and came

over, and Robert told him to get on out into the street, and so I told him he better get on out. He was cussing a lot at the time, and he was still cussing when he walked, and he got down off the dock then, and he handed the oranges that he had in his arm to this Jim Ray, I believe is his name; and then I asked this boy for these oranges and he handed them up, but this boy was still cussing, and so these two boys told Parks he better come on, he was going to get in trouble and so he walked down, and he was still arguing, and right at the corner of the dock we had a couple of bricks and cement slab that we put underneath the truck trailer tires. We had air brakes and they drove forward and we used these bricks, that is what they were for, and he picked up a brick there, and he never got off our property all the time between the argument and the time he hit Combs, and he walked out around the edge of the property and he walked down a little ways and cut across, he was still on our property, and he came back to the front of the truck and said something to Combs, and he just drew back with the brick and hit him on the head, and then I chased him."

Witness further testified to later identifying the defendant and his two companions in a line-up at the police station. He identified the brick with which the defendant hit Combs. He denied on cross-examination that Combs ran at the defendant with a tire tool or other object in a hand.

Two police officers testified to the defendant having been identified in the police show-up by the witness Shipman as the person who hit Combs with a brick, and the defendant admitted to Officer E. B. Meals that he did hit Combs in the head with a brick.

It was then stipulated by the parties that Robert Combs suffered a fractured skull and facial lacerations as a result of the injury wherein he was struck by a brick by the defendant Ilanders Parks, as alleged in the information.

This completed the evidence of the state.

The defendant offered the evidence of one Willie D. Ray, who admitted he was with defendant on the property of the produce company. He claimed that Parks only got one orange and claimed that the prosecuting witness, Combs, commenced to abuse the defendant, ordered him off the property and called for help of another employee, a big boy. He claimed that Parks picked up the brick just an instant before he hit Combs and at a time Combs was approaching him with a tire tool in his hand. Witness Ray admitted that he personally had been previously convicted of burglary in two separate cases, but could not remember about a whiskey possession conviction.

The defendant testified and admitted being on the produce property, denied that he got the oranges out of a box but only picked one up that had been spilled. He admitted hitting Combs in the head with a brick after another employee, "a big boy", had responded to a call from Combs for help in putting defendant and two companions off the produce company property. He claimed that he did it in self-defense. He admitted some eight previous convictions for larceny, burglary, possession of stolen property, etc., and to having served in the State Penitentiary of Oklahoma.

Thus the case closed. The trial court instructed the jury on the law of assault with intent to kill, assault with a dangerous weapon though without any intent to kill, and the offense of assault and battery. The court also gave an instruction on the law of self defense.

The record discloses ample evidence to support the verdict of the jury. The court was lenient in the assessment of the punishment. With records of crime that classified the defendant and his witness as habitual criminals, it is easily understood why the jury believed the evidence of the witnesses for the state, rather than that of the witnesses for the defense. This court under such circum-

stances has no authority to overturn the verdict of the jury, and no facts are disclosed that would justify a modification of the judgment of the court. Tracy v. State, 92 Okla. Cr. 219, 222 P. 2d 389; Riddle v. State, 92 Okla. Cr. 397, 223 P. 2d 379; Bisanar v. State, 93 Okla. Cr. 7, 223 P. 2d 795; Deskin v. State, 94 Okla. Cr. 107, 230 P. 2d 939; Hoover v. State, 94 Okla. Cr. 227, 233 P. 2d 327; Lyons v. State, 95 Okla. Cr. 92, 240 P. 2d 461; Campbell v. State, 95 Okla. Cr. 396, 247 P. 2d 281.

The judgment of the district court of Oklahoma County is accordingly affirmed.

JONES and BRETT, JJ., concur.